# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

GLORIA E. RODRIGUEZ FIGUEROA

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 14-1864 (MEL)

## OPINION AND ORDER

Pending before the court is Gloria E. Rodríguez Figueroa's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. Plaintiff—who applied for disability alleging carpal tunnel, insomnia, depression, scoliosis, cervical problems, herniated disc (c5-56), muscle spasms, migraines, and memory loss—contends that the administrative law judge erred as a matter of law by interpreting raw medical data and that the residual functional capacity assessment was not based on substantial evidence. Tr. 219[1]; ECF No. 24, at 1.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

On September 28, 2011, Plaintiff filed an application for Social Security benefits alleging that on September 28, 2011, (or "the onset date"), she became unable to work due to disability. Tr. 14, 219. The claimant "acquired sufficient quarters of coverage to remain insured through December 31, 2016." Tr. 14. Prior to becoming unable to work Plaintiff worked as a factory operator in a sewing factory from 2007 to 2011. Tr. 56. This job required Plaintiff to sit for eight hours in front of a sewing machine and do different tasks, including sewing military vests and

---

[1] "Tr." refers to the transcript of the record of proceedings.

repairing parts. Tr. 59. Additionally, this job included frequent "[l]ifting [of] packages of parts" and carrying them two or three feet. Id. The claim was denied initially on April 19, 2012, and upon reconsideration on August 3, 2012. Tr. 44–47, 240–47. Thereafter, Plaintiff requested a hearing, which was held on September 11, 2013, before Administrative Law Judge Harold Glanville (hereafter "the ALJ"). Tr. 248–49, 30–43. On December 10, 2013, the ALJ issued a written decision finding that the Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 28, 2011, through the date of this decision." Tr. 8–29. Thereafter, Plaintiff requested review of the ALJ's decision. Tr. 6–7. Plaintiff's request for review was denied by the Appeals Council on October 23, 2014, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1–5. Plaintiff filed a complaint on December 1, 2014. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 24; 30.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007)

(citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant

evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).  This finding is known as the individual's residual functional capacity (or "RFC").  Id.  If the ALJ concludes that the plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the plaintiff's residual functional capacity, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

### III.  THE ALJ'S DETERMINATION

In the instant case the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, September 28, 2011.  Tr. 16.  At step two, the ALJ determined that Plaintiff has severe medically determinable impairments of "lumbar and cervical degenerative discogenic disease with radiculopathy, bilateral carpal tunnel syndrome, asthma, generalized anxiety, and depression . . . ."  Id.  Although Plaintiff alleges migraine headaches, the ALJ found that the record does not establish migraine headaches as one of Plaintiff's medically determinable impairments.  Tr. 17.  At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, subpart P, appendix 1."  Id.  Next, the ALJ determined that Plaintiff,

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she needs to alternate positions between sitting and standing every two hours. She needs a clean work environment, free of respiratory irritants such as dust, fumes, strong odors and gases. She is limited to occasional bilateral fine manipulation. Her mental impairment imposes additional limitations that limit her to perform unskilled work that involves simple and repetitive tasks.

Tr. 19. At step four, the ALJ determined the Plaintiff is unable to perform any of her past relevant work. Tr. 23. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. The vocational expert testified, taking all of these factors into account, that an individual would be able to perform the requirements of these representative occupations: an inspector and hand packager, surgical instrument inspector, and inspector of molding machines. Tr. 24. Accordingly, the ALJ concluded that Plaintiff is not disabled because there is work in the national economy that she can perform. Id.

## IV. ANALYSIS

Rather than challenging a specific step in the sequential process or a specific impairment, Plaintiff challenges the ALJ's decision in three ways: (1) the ALJ erred as a matter of law in interpreting raw medical data in functional terms, (2) the ALJ's conclusion of plaintiff's ability to perform the residual functional capacity assessment is not based on substantial evidence, and (3) the ALJ erred in not including in his residual functional capacity assessment that the plaintiff has to avoid repetitive movements. ECF No. 24, at 1.

### 1. Plaintiff's claim that the ALJ interpreted raw medical data in functional terms.

Plaintiff contends that the ALJ erred as a matter of law by relying on exhibits 17F, 20F, and 21F, because they contain raw medical data and were not evaluated by a "medical expert or examiner." ECF No. 24, at 4; tr. 132–34, 161–74, 175–217. In order to determine a claimant's RFC, the ALJ cannot rely on raw medical evidence; rather, he must look to physicians' opinions to translate that evidence into functional terms. See Vega Valentín v. Astrue, 725 F. Supp. 2d 264, 271 (D.P.R. 2010) (citing Berríos López v. Sec'y of Health & Human Servs., 951 F.2d 427, 430 (1st Cir. 1991)); Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 293 (1st Cir. 1986)).

The Social Security regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). While the ALJ cannot assess an RFC based on bare medical findings, that "does not mean, however, that the [ALJ] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (per curiam).

Plaintiff first argues that the ALJ disregarded information other than the Global Assessment of Functioning ("GAF") score when evaluating exhibit 17F. ECF No. 24, at 4. This exhibit is titled as "Partial Hospitalization Intensive Outpatient Program Discharge Summary and Medications Reconciliation," with an admission date of 4/17/13 and a discharge date of 4/23/13. See tr. 132-134. This argument seems to be contrary to Plaintiff's argument that the ALJ interpreted raw medical data in functional terms. Regardless, the GAF score is a numeric scale from 0 to 100 that is used by mental health professionals "to rate subjectively the social, occupational, and psychological function of adults, e.g., how well or adaptively one is meeting various problems-in-living." Negrón v. Colvin, Civ. No. 13-1926 (CVR), 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015); see Echandy-Caraballo v. Astrue, Civ. No. CA 06-97 M., 2008 WL 910059, at *4 n.7 (D.R.I. Mar. 31, 2008) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000)). Importantly, "the GAF rating system . . . is not raw medical data; rather, the system provides a way for a mental health professional to turn raw medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's

mental functioning." González-Rodríguez v. Barnhart, 111 F. App'x 23, 25 (1st Cir. 2004) (per curiam) (unpublished) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir.2002)). Thus, the ALJ did not interpret raw medical data as the Plaintiff alleges because a GAF score is not considered raw medical data. However, there are other concerns in the analysis of the GAF score that will be addressed in the next section.

Next, Plaintiff argues that the ALJ interpreted raw medical data by using Exhibit 20F and also did so in an inconsistent way. ECF No. 24, at 5. The first part of exhibit 20F is a medical source statement, which allowed for the physician to express the limitations of a claimant in functional terms.[2] Tr. 161–63, 499–501. The rest of the documents are progress notes provided by Dr. Edna E. Laracuente Rivera ("Dr. Laracuente"), a treating psychiatrist, and they were used by the ALJ to see if they aligned with the medical source statement and the GAF score provided by the ALJ. Tr. 164–74, 22. Even if these progress notes were considered raw medical data, they were not interpreted into functional terms by the ALJ. Thus, they were not used inappropriately. However, similar to the GAF score in exhibit 17F, there are other concerns in regards to the ALJ's analysis of exhibit 20F that will be discussed in the next section.

In regards to Exhibit 21F, Plaintiff argues that "the ALJ interpreted raw medical data with portions of this medical record to reach a conclusion that was not part of what those documents said." ECF No. 24, at 5. Plaintiff does not elaborate on what the documents actually say. Id. Moreover, Plaintiff fails to point to specifics in the ALJ's opinion other than a single sentence stating that "[d]espite the abnormalities, the claimant did not require physician intervention at least

---

[2] The medical source statement is provided by the Social Security Administration and is titled "Medical Source Statement of Ability to do Work-Related Activities (Mental)". Tr. 161–63. This form instructs the physician or psychologist to: "[p]lease assist us in determining this individual's ability to do work-related activities on a sustained basis . . . . Please give us your professional opinion of what the individual can still do despite his/her impairment(s). The opinion should be based on your findings with respect to medical history, clinical and laboratory findings, diagnosis, prescribed treatment and response, and prognosis." Tr. 161 (emphasis in original).

8

once every two months or inpatient hospitalization." Id.; tr. 18. While some of the pages that the ALJ cites to are difficult to make out as they appear to be poor photocopies, the ALJ sentence referred to by the Plaintiff is only discussing how often the Plaintiff needed physician intervention for her asthma, which is not an interpretation of raw medical data. See tr. 18.

2. **Plaintiff's claim that the ALJ's conclusion of her ability to perform the RFC was not based on substantial evidence.**

Plaintiff further argues that since the "State Agency Psychological Consultants did not have an opportunity to assess Exhibits 17, 20, and 21," that "the opinion of the ALJ, which is based on the state agency consultants is not based on substantial evidence." ECF No. 24, at 7.[3] Plaintiff does not state which state agency psychological consultants she is referring to, nor does she indicate how she knows that they did not review Exhibits 17F, 20F, and 21F. Id. However, this issue must be addressed as exhibit 17F is a report from a partial hospitalization due to an "emotional crisis with acute symptoms of depression" and exhibit 20F is the documents provided by the treating psychiatrist Dr. Laracuente. Tr. 132–34, 161–74.

In making his decision in regards to Plaintiff's RFC for her mental impairments, the ALJ gave "little weight" to Plaintiff's treating psychiatrist Dr. Laracuente, but rather agreed with the state agency psychological consultant's, Dr. Adalisse Borges ("Dr. Borges"), assessment. Tr. 22. The ALJ noted that Dr. Borges's assessment was affirmed by another non-examining source, Dr. E. Charles ("Dr. Charles")[4], and that their conclusions were consistent with the reports of the consultant psychiatrist, Dr. Elvira Giambartolomei ("Dr. Giambartolomei")[5]. Id.

---

[3] Plaintiff does not give a letter for these exhibits but states that this same argument was "discussed in Argument number 1 above," thus the Plaintiff is referring to Exhibits 17F, 20F, and 21F. Moreover, Exhibits "F" are the only exhibits that exceed the number 13. See tr. "Court Transcript Index."
[4] The report from Dr. E. Charles is mainly blank other than section "5. Advice" which states: "Mental determination in file dated 04/19/12 is affirmed." Tr. 465–467. Furthermore, the signature line on page 3 reads: "Charles, E." Tr. 467. Thus, Dr. Charles's full name is not included on this form. Tr. 465–467.
[5] Dr. Giambartolomei performed a psychiatric evaluation on the Plaintiff on February 10, 2012. Tr. 108–111.

Here, the ALJ stated that Dr. Laracuente's assessment and GAF score were "not just inconsistent [with] the evidence but also are internally not supported by her own findings." Tr. 21–22. To support this, the ALJ pointed out that Dr. Laracuente's GAF score of 50 was contrary to the finding that Plaintiff had "moderate limitations in her ability to understand, remember and carry short simple instructions." Tr. 22. This finding is taken from Dr. Laracuente's medical source statement.[6] However, this same source statement also indicates that Plaintiff has extreme limitations[7] in her ability to make judgments on simple work-related decisions, to interact appropriately with the public, to interact appropriately with supervisor(s), to interact appropriately with co-workers, and to respond appropriately to work pressures in a usual work setting. Tr. 161–62, 499–500. The GAF score, a numeric scale from 0 to 100, is used by mental health professionals "to rate subjectively the social, occupational, and psychological function of adults . . . ."[8] Negrón v. Colvin, Civ. No. 13-1926 (CVR), 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015). Thus, even though Dr. Laracuente indicated that Plaintiff only had "moderate" limitations in regards to understanding and remembering short simple instructions as the ALJ pointed out, the rest of the medical source statement indicates "extreme" limitations in other occupational and social

---

[6] The medical source statement is dated September 3, 2013, but the signature is illegible. Tr. 163, 501. However, the ALJ refers to this medical source statement as that of Dr. Laracuente. Tr. 21. Additionally, this medical source statement is the first three pages of exhibit 20F, and the remaining pages are all "Progress Notes" clearly labeled at the top with Dr. Laracuente's name. Tr. 161–74, 499–512. Moreover the "Court Transcript Index," included at the beginning of the transcript, indicates that this report was provided by Dr. Laracuente.

[7] The medical source statement defines extreme as "[t]here is major limitations in this area. There is no useful ability to function in this area." Tr. 161.

[8] A GAF score between 41 and 50 "is described as '[s]erious symptoms … OR any serious impairment in a social, occupational, or school functioning….'" Hernández v. Comm'r of Soc. Sec., 989 F. Supp. 2d 202, 207 n.2 (D.P.R. 2013) (emphasis in original) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000)). While, "a score 51–60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Negrón v. Colvin, Civ. No. 13-1926 (CVR), 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015). "A GAF score in the 61–70 range indicates that one has some mild symptoms or some difficulty in social, occupational or school functioning, but generally functions pretty well and has some meaningful relationships." Stanley v. Colvin, Civ. Action No. 11-10027-DJC, 2014 WL 1281451, at *5 n.5 (D. Mass. Mar. 28, 2014) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed. text rev. 2000)).

functions. Tr. 161–62. Thus, the GAF score was not inconsistent with her medical source statement as a whole.

Moreover, the ALJ pointed to the treatment notes of Dr. Laracuente, stating that appointments were scheduled every two to three months, that the Plaintiff remained oriented in the three spheres, and although cognitive difficulties were reported, Dr. Laracuente's notes also reported that the Plaintiff had good judgment and insight. Tr. 22. While the ALJ's statements are accurate, these notes do not indicate that a GAF score of 50 was unsubstantiated. For example, the treating notes for November 4, 2013, indicate that Plaintiff's behavior was appropriate, judgment was good, and insight was good but also indicate psychomotor agitation, concentration problems, unkempt appearance, depression, and anxiety. Tr. 167. Moreover, the treatment notes and the medical source statement both mainly contain boxes to be checked but the medical source statement gave Dr. Laracuente greater leeway to note the functional limitations of Plaintiff. Tr. 161–74. Thus, the ALJ's reasons for giving Dr. Laracuente's opinion little weight is not supported by substantial evidence.

The disability determination process generally accords "more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). The ALJ, however, is not always required to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a

treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210–211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)).

As a treating physician, Dr. Laracuente had the opportunity to meet with Plaintiff multiple times, where as Dr. Borges, whom the ALJ agreed with, would not have had this opportunity. Additionally, Dr. Borges's analysis was completed on April 17, 2012. Tr. 225. By that time, Dr. Laracuente would have met with the Plaintiff at least five times. See tr. 164. However, the mental analysis completed by Dr. Borges for the disability determination explanation states that the evidence from Dr. Laracuente "was requested but not received." Tr. 224. Thus, Dr. Borges completed her analysis without any information from the treating psychiatrist. Moreover, Dr. Laracuente continued to meet with Plaintiff through at least November 3, 2013. See tr. 167. Dr. Laracuente provided Plaintiff's GAF score some time after August 8, 2013, and completed the medical source statement on September 3, 2013. Tr. 163–64. Thus, Dr. Laracuente had the benefit of consistently treating Plaintiff for almost a year and a half after Dr. Borges's analysis.

Furthermore, it cannot be said that Dr. Laracuente's medical source statement or GAF score is clearly inconsistent with the record as it is the most recent report. See Hernández v. Comm'r of Soc. Sec., 989 F. Supp. 2d 202, 211 (D.P.R. 2013) (noting that a doctor's last and most recent report was not clearly inconsistent with the rest of the evidence because the Plaintiff's depression may have worsened). Thus, Plaintiff's condition may have changed or worsened since Dr. Borges's analysis. In fact, Plaintiff was hospitalized a year after Dr. Borges's opinion from April 17, 2013, until April 23, 2013, in order to "[s]tabilize emotional crisis with acute symptoms of depression." Tr. 132. Furthermore, Plaintiff's GAF score, albeit provided by three different

medical providers[9], declined over time: Plaintiff received a GAF score of 65 from Dr. Giambartolomei on February 10, 2012, a GAF score of 53-60[10] on her discharge summary from San Juan Capestrano Hospital on April 23, 2013, and a GAF score of 50 from Dr. Laracuente sometime after August 8, 2013. Tr. 110, 132, 164. The ALJ noted that Dr. Borges's opinion was affirmed by another non-examining source, Dr. Charles. Tr. 22. However, the report by Dr. Charles, dated August 3, 2012, does not contain any analysis and is mainly left blank except for a brief sentence: "[m]ental determination in file dated 04/19/12 is affirmed." Tr. 465–67.

The ALJ stated that the state agency psychological consultant's conclusion was consistent with that of Dr. Giambarolomei, a consulting psychiatrist. Tr. 22. However, the ALJ only gave partial weight to the GAF score of 65 given by Dr. Giambarolomei, as it showed "that the claimant is not as limited as alleged." Id. Next, the ALJ acknowledged that the Plaintiff needed partial hospitalization in April 2013 and that her attending psychiatrist assessed a GAF score of 53–60. Id. The ALJ believed that this GAF score was consistent with the evidence. Id. Since 2013, the GAF score is no longer used in the Diagnostic and Statistics Manual of Mental Disorders. Negrón v. Colvin, Civ. No. 13-1926 CVR, 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015); Hall v. Colvin, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) (citing Am. Psychiatric Ass'n, *Diagnostic and Stat. Manual of Mental Disorders DSM–5* 16 (5th ed. 2013)). On July 22, 2013, the Social Security Administration published Administrative Memorandum AM-13066 in order to guide adjudications on using GAF scores. Bourinot v. Colvin, 95 F. Supp. 3d 161, 178 (D. Mass. 2015). This memorandum "indicates that the SSA will continue to receive and consider GAF scores just as it

---

[9] In addressing the various GAF scores, the ALJ stated that one was assessed by Dr. Laracuente, another by Dr. Giambartolomei, and a third by an "attending psychiatrist" at San Juan de Capestrano. Tr. 21–22.
[10] While the ALJ stated that the GAF score provided by the attending psychiatrist from Plaintiff's partial hospitalization at San Juan de Capestrano was 53–60, it may actually be a score of 55–60. Tr. 22, 132. The score is partially illegible. Tr. 132, 470.

13

would other opinion evidence, but scores must have supporting evidence to be given significant weight." Id. (citing Kroh v. Colvin, Civ. No. 3:13-CV-01533, 2014 WL 4384675, at *18 (M.D. Pa. Sept. 4, 2014)). Furthermore, this memorandum "states that 'GAF ratings assigned by different clinicians are inconsistent' and 'adjudicators cannot draw reliable inferences from the difference in GAF ratings assigned by different clinicians or from a single GAF score in isolation.'" Hall v. Colvin, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) (quoting AM-13066). Thus, as there were three different GAF scores here given by different medical providers (Dr. Giambarolomei, Plaintiff's discharge summary from San Juan Capestrano Hospital, and Dr. Laracuente) at different periods of time (February 2012, April 2013, and around August 2013), the ALJ cannot draw reliable inferences from the differences in these scores. See tr. 108–10, 132, 164. However, just because the GAF scores are different does not mean that only one is consistent with the evidence, as they were provided at different periods of time.

The ALJ was not justified in giving the treating psychiatrist's, Dr. Laracuente, opinion little weight. Dr. Laracuente's assessment was supported by her own findings. Moreover, while her assessment may have varied from the other evidence in the record, her treating notes and analysis are the most recent. Additionally, the state agency psychological consultant, Dr. Borges, which the ALJ agreed with, performed her analysis a year and a half before Dr. Laracuente and Dr. Borges did not have any medical documents from Dr. Laracuente at that time. Regardless of if Dr. Laracuente provided the GAF score for Plaintiff's partial hospitalization, it was inappropriate for the ALJ to decide which GAF score most accurately reflected the condition of the patient when the scores were determined at different periods of time.

Plaintiff makes many additional claims within this section. Although Plaintiff's assertions are disorganized and rarely cite to case law, the court will take them in turn. Plaintiff argues that

14

"the ALJ did not consider the claimant[']s symptoms of migraine, dizziness, and shoulders pain, and its effect on the RFC, contrary to 20 CFR 404.1545." ECF No. 24, at 7. Plaintiff does not provide any citations for shoulder pain in this section and the only reference Plaintiff makes to dizziness is an "initial interview [by] Dr. Beltran Pasarell, a treating physician." ECF No. 24, at 8. However, this interview form indicates that Plaintiff stated that she suffered from headaches, dizziness, and migraines, but does not support the argument that Dr. Beltrán "acknowledged" that these symptoms existed. See tr. 66.

Plaintiff also argues that "[t]he ALJ statement that the state medical consultant considered the claimant's allegations of migraine headaches when completing her RFC is just incorrect." ECF No. 24, at 8. This argument has merit as the ALJ cited to "8F and 2A, pages 9-10". Tr. 17, 21. Exhibit 8F is a one page document entitled "CASES ANALYSIS," which is signed by Dr. Rivera Osvaldo. Tr. 431. However, the only writing on this document says "please see e cat." Id. Moreover, pages 9 and 10 of Exhibit 2A contain the physical residual functional capacity assessment completed by Dr. Rivera Osvaldo on January 10, 2012. Tr. 228. However, there is nothing within these pages indicating that the state agency medical consultant considered Plaintiff's allegations of migraine headaches as alleged by the ALJ. See tr. 227–28. In determining the residual functional capacity, the ALJ "will consider the limiting effects of all [claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 404.1545(e). Here, the ALJ stated that by giving weight to the opinion of the state agency medical consultant (citing "Exhibit 8F and 2A, pages 9-10") he "considered the effect of her alleged symptoms even though the evidence did not support the presence of a medically determinable impairment." Tr. 17. However, this is inaccurate as there is nothing on the pages that the ALJ cited to that indicates that the state agency medical consultant considered Plaintiff's alleged migraines. Tr. 227–28. Thus, in considering

Plaintiff's RFC, the ALJ should have considered the limitations of Plaintiff's alleged migraines, even though they were not found to be severe.

Plaintiff also argues that "[t]he ALJ statement that the record does not contain descriptions of the claimant's migraine headaches is also incorrect." ECF No. 24, at 8. However, Plaintiff's argument does not have merit, as the ALJ did not state that the record did not contain descriptions of Plaintiff's migraine headaches but rather that the record did not contain a detailed description of Plaintiff's typical headache and that the evidence could not rule out other possible disorders that could cause those symptoms. Tr. 17. Thus, Plaintiff's description of the ALJ's statement is inaccurate.

Next, Plaintiff argues that "[t]he ALJ did not entertain" some of the findings by Dr. Giambartolomei. ECF No. 24, at 8. However, the ALJ did consider the findings of Dr. Giambartolomei and discussed her GAF score as well as other findings. Tr. 22. Here, Plaintiff has pulled out a few specific findings from a three page report. ECF No. 24, at 8; Tr. 108–110. Plaintiff's argument is flawed as the ALJ need not articulate every finding from a medical report in order to "entertain" the findings.

Lastly, Plaintiff states that the ALJ agreed with Dr. Osvaldo Rivera ("Dr. Rivera"), the state agency medical consultant, who concluded that Plaintiff is restricted to light level exertion and limitations pushing and pulling, with other non-exertional limitations. ECF No. 24, at 9; see also tr. 21. Plaintiff argues that despite agreeing with Dr. Rivera, "the ALJ did not include limitations of pushing, pulling or manipulative limitations" in forming Plaintiff's RFC. ECF No. 24, at 9. However, contrary to Plaintiff's argument, the ALJ found that the Plaintiff could "perform light work as defined in 20 CFR 404.1567(b) except that she needs to alternate positions between sitting and standing every two hours." Tr. 19. Light work is defined by 20 C.F.R. § 404.1567(b):

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). This is exactly in line with Dr. Rivera's assessment that Plaintiff could occasionally lift 20 pounds (including upward pulling), and could frequently lift 10 pounds (including upward pulling). Tr. 227. Moreover, this definition notes only "some pushing and pulling." Furthermore, the ALJ restricted this even more by stating that the Plaintiff needs to alternate between sitting and standing every two hours. Tr. 19. Lastly, the manipulative limitations that the ALJ referred to in Dr. Rivera's assessment were "due to bilateral carpal tunnel syndrome." Tr. 21. The ALJ addressed this in the RFC by limiting the Plaintiff to "occasional bilateral handling." Tr. 23.

### 3. Plaintiff's Claim that repetitive movement restrictions were not included in the RFC.

The final argument that the Plaintiff makes is that "the ALJ did not include in his RFC the repetitive movements' limitations, which the medical records contain." ECF No. 24, at 10. As the Plaintiff points out, the ALJ twice stated that: "Dr. Cases' limitations were consistent with Dr. Benes' restrictions regarding her need to avoid repetitive movements." Tr. 20, 23.[11] On October 11, 2011, Dr. Benes, a treating physician, "encourage[d] compliance with wrist splint(s) use and avoid prolonged and/or repetitive movements." Tr. 400. While this note does not directly state that this was in regards to Plaintiff's carpal tunnel syndrome, the wrist splits would indicate this. See Tr. 399–400. Dr. Benes made a similar recommendation previously on August 19, 2011: "[a]void prolongued and/or repetitive movements." Tr. 402.

---

[11] Dr. Héctor J. Cases Mayoral ("Dr. Cases"), who specializes in neurology, conducted a neurologic evaluation of Plaintiff on May 7, 2012. Tr. 456. Dr. Lourdes Benes ("Dr. Benes") had appointments with the Plaintiff at the "Advanced Neurology Center" on August 19, 2011, and October 11, 2011.

Plaintiff takes issue with Dr. Cases's, a neurologic consultative examiner, statement that: "[u]pper extremities EMG/NCV results should be obtained. Should those be compatible with a carpal tunnel syndrome, she should avoid repetitive motion work with hands on a sustained manner." Tr. 458. Plaintiff states that those tests were available and part of the record. ECF no. 24, at 11. However, regardless of whether those tests were available for Dr. Cases to review, at issue is whether the ALJ should have included a limitation on repetitive movements in the RFC. In his written opinion, the ALJ clarified that "[Plaintiff's] bilateral carpal tunnel syndrome requires that she be limited to occasional bilateral handling." Tr. 23. Thus, the RFC contained a restriction that "[Plaintiff] is limited to occasional bilateral fine manipulation." Tr. 19. Therefore, contrary to Plaintiff's arguments, the ALJ did include a limitation in the RFC that addressed Plaintiff's need to avoid repetitive movements. At the end of Plaintiff's memorandum, Plaintiff takes issue with this restriction stating that it "is not based on any medical information in the record." However, as stated above, this is based on the evaluations of Dr. Benes and Dr. Cases. If Plaintiff meant that she is not even capable of occasional fine manipulation, then she bears the burden of proving that she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). Thus, it is not required that the Commissioner show what the Plaintiff is capable of, rather the Plaintiff bears the burden of establishing a disability.

Plaintiff adds that "the ALJ interpreted as her only upper extremities limitation, that she could do bilateral fine manipulation occasionally." ECF No. 24, at 11. However, this is a narrow view of the RFC established by the ALJ. The ALJ also included that Plaintiff has the residual functional capacity to perform light work, adding that she also needs to be able to "alternate positions between sitting and standing every two hours." Tr. 19. Thus, by setting the RFC at

"light work", as discussed above, rather than a more demanding standard, the ALJ has set other limitations for Plaintiff's upper extremities.

Lastly, the Plaintiff argues that while the ALJ agreed with Dr. Rivera's opinion, the ALJ failed to add a limitation for "gross manipulation" as suggested by Dr. Rivera. ECF No. 24, at 11. Plaintiff's statement that the ALJ agreed with the opinion of Dr. Rivera is accurate but does not encompass the whole situation. After discussing the findings of Dr. Benes, a treating physician, and Dr. Cases, a consultant examiner, the ALJ stated that "[c]onsidering the objective findings and opinion evidence of examining sources, the undersigned agrees with the opinion of Dr. Osvaldo Rivera." Tr. 21. However, this does not mean that the ALJ must adopt every limitation that is included in Dr. Rivera's analysis. For the ALJ determines the RFC "based on all the relevant evidence in the record," not just one state agency medical consultant that the ALJ agrees with. 20 C.F.R. § 404.1545(a)(1). Moreover, "[t]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing Courts." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

V. CONCLUSION

Based on the foregoing analysis, the Commissioner's decision is **REVERSED IN PART** and **AFFIRMED IN PART**. The decision of the Commissioner regarding the weight to be granted to Dr. Laracuente's opinion was not based on substantial evidence. Moreover, in considering the Plaintiff's RFC, the ALJ should have considered the limitations of Plaintiff's alleged migraine headaches, even though they were not found to be severe. Therefore, the Commissioner's decision is **VACATED IN PART** and the case **REMANDED** for further proceedings consistent with this opinion regarding the opinion of Dr. Laracuente and the limitations of Plaintiff's alleged migraine headaches. With respect to the ALJ's interpretation of "raw medical data" and all other aspects of

the Plaintiff's RFC, the Plaintiff's arguments are rejected and the Commissioner's decision is hereby **AFFIRMED.** This remand does not dictate any outcome with regard to the final finding of disability.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of March, 2018.

s/Marcos E. López<br>U.S. Magistrate Judge